UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY G. BARRETT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PJT PARTNERS INC. and ANDREW W.W. CASPERSEN,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><u>DEMAND FOR JURY TRIAL</u> |

**CLASS ACTION COMPLAINT**

Plaintiff Gregory G. Barrett ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding PJT Partners Inc. ("PJT" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired PJT securities between November 12, 2015 and March 28, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and defendant Andrew W.W. Caspersen ("Caspersen"), a managing partner at the Company's Park Hill Group (described below).

2. PJT provides various strategic advisory, restructuring and special situations, and fund placement and secondary advisory services to corporations, financial sponsors, institutional investors, and governments worldwide. PJT was formerly the financial and strategic advisory services, restructuring and reorganization advisory services and Park Hill Group businesses of Blackstone, until a spin-off completed on or around October 1, 2015 established PJT as an independent entity. Through Park Hill Group, PJT provides fund placement and secondary advisory services for alternative investment managers, including private equity funds, real estate funds and hedge funds.

3. At all relevant times until his termination on March 28, 2016, defendant Caspersen was a managing partner at Park Hill Group.

4. PJT is headquartered in New York, New York. The Company's stock trades on the NYSE under the ticker symbol "PJT."

5. Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) PJT's compliance and fraud-prevention controls were inadequate; (ii) as a consequence of the

Company's inadequate controls, Caspersen, a managing partner at Park Hill Group, perpetrated a criminal scheme to defraud investors of more than $95 million; and (iii) as a result of the foregoing, PJT's public statements were materially false and misleading at all relevant times.

6. On March 28, 2016, defendant Caspersen was arrested and charged with securities fraud and wire fraud for scheming to defraud investors of more than $95 million since at least as early as July 2015. In a parallel action, the SEC also charged Caspersen with defrauding two institutions to invest in a shell company that he controlled.

7. On this news, PJT stock fell $2.81, or 10.62%, to close at $23.66 on March 28, 2016.

8. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

11. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as the Company is headquartered in this District.

12. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13. Plaintiff, as set forth in the attached Certification, acquired PJT securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14. Defendant PJT is incorporated in Delaware, and the Company's principal executive offices are located at 280 Park Avenue, New York, New York 10017.

15. Defendant Caspersen was a managing partner at PJT's Park Hill Group at all relevant times until his termination on March 28, 2016.

## SUBSTANTIVE ALLEGATIONS

### Background

16. PJT provides various strategic advisory, restructuring and special situations, and fund placement and secondary advisory services to corporations, financial sponsors, institutional investors, and governments worldwide. PJT was formerly the financial and strategic advisory services, restructuring and reorganization advisory services and Park Hill Group businesses of Blackstone, until a spin-off completed on or around October 1, 2015 established PJT as an independent entity. Through Park Hill Group, PJT provides fund placement and secondary advisory services for alternative investment managers, including private equity funds, real estate funds and hedge funds.

17. At all relevant times until his termination on March 28, 2016, Caspersen was a managing partner at Park Hill Group.

### Materially False and Misleading Statements Issued During the Class Period

18. The Class Period begins on November 12, 2015, when PJT filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the

quarter ended September 30, 2015 (the "Q3 2015 10-Q"). For the quarter, PJT reported net income of $41.89 million, or $2.22 per diluted share, on net revenue of $147.32.

19. In the Q3 2015 10-Q, PJT described Park Hill Group as "a world leading fund placement agent" and "the only group among its peers with top-tier dedicated private equity, hedge fund, real estate and secondary advisory groups."

20. The Q3 2015 10-Q contained signed certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX") by PJT's Chief Executive ("CEO") Paul J. Taubman ("Taubman") and Chief Financial Officer ("CFO") Helen T. Meates ("Meates"), stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

21. On February 29, 2016, PJT filed an annual report on Form 10-K with the SEC announcing the Company's financial and operating results for the quarter and year ended December 31, 2015 (the "2015 10-K"). For the quarter, PJT reported a net loss of $13.19 million, or $0.72 per diluted share, on net revenue of $103.82 million. For 2015, PJT reported net income of $7.58 million, or $0.42 per diluted share, on net revenue of $405.94 million, compared to net income of $4.49 million on net revenue of $401.07 million for 2014.

22. In the 2015 10-K, PJT described Park Hill Group as "a world-leading fund placement agent" and "the only group among its peers with top-tier dedicated equity, hedge fund, real estate and secondary advisory groups." The 2015 10-K further stated:

> ***Regulation***
>
> Our business, as well as the financial services industry generally, is subject to extensive regulation in the U.S. and across the globe. As a matter of public policy, regulatory bodies in the U.S. and the rest of the world are charged with safeguarding the integrity of the securities and other financial markets and with protecting the interests of customers participating in those markets. In the U.S., the SEC is the federal agency responsible for the administration of the federal securities laws. PJT

> Partners LP, through which strategic advisory and restructuring and special situations services are conducted in the United States, and Park Hill Group LLC, which is an entity within the Park Hill Group fund placement and secondary advisory business, are registered broker-dealers. These registered broker-dealers are subject to regulation and oversight by the SEC. In addition, the Financial Industry Regulatory Authority ("FINRA"), a self-regulatory organization that is subject to oversight by the SEC, adopts and enforces rules governing the conduct, and examines the activities of its member firms, which would include any such registered broker-dealer. State securities regulators also have regulatory or oversight authority over any such registered broker-dealer.
>
> . . .
>
> Certain parts of our business are subject to compliance with laws and regulations of U.S. Federal and state governments, non-U.S. governments, their respective agencies and/or various self-regulatory organizations or exchanges relating to, among other things, the privacy of client information, and any failure to comply with these regulations could expose us to liability and/or reputational damage.

23. The 2015 10-K contained signed certifications pursuant to SOX by PJT CEO Taubman and CFO Meates, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24. During the Class Period, the following statements appeared on Park Hill Group's website (www.parkhillgroup.com):

- Park Hill provides global alternative asset advisory and fundraising services across four specialized verticals. Our platform includes deep expertise in private equity, real estate and hedge funds, as well as secondary advisory services.

- Leveraging a senior team with an average of over 15 years of global alternative asset and distribution experience, Park Hill knows the investment preferences of the world's biggest institutional investors.

- Along with our rigorous engagement model and global relationships, our breadth enables us to customize high-quality solutions for the needs of our clients.

- Park Hill, since its inception, has served as a global advisory and placement agent to funds that raised in excess of $260 billion for 194 private equity, real

estate funds, and hedge funds. Additionally, we provide top-tier global distribution capabilities through our senior relationships across the limited partner arena.

- Our senior practitioners are actively involved in every stage of the fundraising process and lead our uncompromising dedication to achieving superior client outcomes.

25. The statements referenced in ¶¶ 18-24 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) PJT's compliance and fraud-prevention controls were inadequate; (ii) as a consequence of the Company's inadequate controls, Caspersen, a managing partner at Park Hill Group, perpetrated a criminal scheme to defraud investors of more than $95 million; and (iii) as a result of the foregoing, PJT's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

26. On March 28, 2016, Caspersen was fired from his position at Park Hill Group. That same day, Caspersen was arrested and charged with securities fraud and wire fraud for scheming to defraud investors of more than $95 million since at least as early as July 2015. In a parallel action, the SEC also charged Caspersen with defrauding two institutions to invest in a shell company that he controlled.

27. As a result of this news, PJT stock fell $2.81, or 10.62%, to close at $23.66 on March 28, 2016.

28. On April 6, 2016, in an article entitled "A Wall Street Family's Charmed Life Is Thrown Into Turmoil," the *New York Times* cited a "person with direct knowledge of the situation"

and reported that Caspersen "had taken advantage of [Park Hill Group's] payment process that allowed him to personally send out invoices to clients" in order to perpetrate his fraudulent scheme.

29. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired PJT securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

31. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, PJT securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by PJT or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

33. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;
- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of PJT;
- whether the defendant Caspersen caused PJT to issue false and misleading financial statements during the Class Period;
- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of PJT securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- PJT securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold PJT securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

37. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

41. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of PJT securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire PJT securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

42. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for PJT securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about PJT's finances and business prospects.

43. By virtue of their positions, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as

would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

44. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As a managing partner of Park Hill Group, Caspersen had knowledge of the details of PJT's internal affairs.

45. Defendant Caspersen is liable both directly and indirectly for the wrongs complained of herein. Because of his position of control and authority as a managing partner of PJT's Park Hill Group, Caspersen was able to and did, directly or indirectly, control the content of the statements of PJT. As an officer of a publicly-held company, defendant Caspersen had a duty to disseminate timely, accurate, and truthful information with respect to PJT's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of PJT securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning PJT's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired PJT securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

46. During the Class Period, PJT securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of PJT securities

at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of PJT securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of PJT securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

47. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

48. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against Defendant Caspersen)**

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. During the Class Period, Caspersen participated in the operation and management of PJT, and conducted and participated, directly and indirectly, in the conduct of PJT's business affairs. Because of his senior position, he knew the adverse non-public information about PJT's misstatement of income and expenses and false financial statements.

51. As an officer of a publicly owned company, defendant Caspersen had a duty to disseminate accurate and truthful information with respect to PJT's financial condition and results of operations, and to correct promptly any public statements issued by PJT which had become materially false or misleading.

52. Because of his position of control and authority as a managing partner of PJT's Park Hill Group, Caspersen was able to, and did, control the contents of the various reports, press releases and public filings which PJT disseminated in the marketplace during the Class Period concerning PJT's results of operations. Throughout the Class Period, Caspersen exercised his power and authority to cause PJT to engage in the wrongful acts complained of herein. Caspersen therefore was a "controlling person" of PJT within the meaning of Section 20(a) of the Exchange Act. In this capacity, he participated in the unlawful conduct alleged which artificially inflated the market price of PJT securities.

53. Defendant Casperseon, therefore, acted as a controlling person of PJT. By reason of his senior management position at PJT's Park Hill Group, defendant Caspersen had the power to direct the actions of, and exercised the same to cause, PJT to engage in the unlawful acts and conduct complained of herein. Defendant Caspersen exercised control over the general operations of PJT and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

54. By reason of the above conduct, Caspersen is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by PJT.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: April 15, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email: peretz@bgandg.com

***Attorneys for Plaintiff***

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1. I, Gregory G Barrett, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against PJT Partners, Inc. ("PJT Partners" or "the Company") (NYSE: PJT) and, authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire PJT Partners securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired PJT Partners securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in PJT Partners securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

**Executed** April 3, 2016
**(Date)**

**(Signature)**

Gregory G Barrett
**(Type or Print Name)**

**PJT PARTNERS INC. (PJT)**

**Barrett, Gregory G.**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 11/6/2015 | Purchase | 69 | $22.0000 |
| 11/6/2015 | Purchase | 31 | $22.0000 |
| 3/18/2016 | Purchase | 50 | $26.2700 |