UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY G. BARRETT, Individually and On Behalf of All Others Similarly Situated, <br><br>                 Plaintiff, <br><br>         v. <br><br> PJT PARTNERS INC., ANDREW W.W. CASPERSEN, PAUL J. TAUBMAN, AND HELEN T. MEATES, <br><br>                 Defendants. | Case 1:16-cv-02841 <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW OF DEFENDANTS PJT PARTNERS INC.,
PAUL J. TAUBMAN, AND HELEN T. MEATES IN SUPPORT OF THEIR
<u>MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Aidan Synnott
Amy L. Barton
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
E-mail:  asynnott@paulweiss.com
E-mail:  abarton@paulweiss.com

*Attorneys for Defendants PJT Partners Inc.,
Paul J. Taubman, and Helen T. Meates*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF ALLEGED FACTS.............................................................................3

    A.    PJT Partners Becomes a Public Company on October 1, 2015 .................3

    B.    The Discovery of Caspersen's Fraud............................................................3

    C.    The Complaint ...............................................................................................5

ARGUMENT.......................................................................................................................5

I.    The Section 10(b) and Rule 10b-5 Claims Should Be Dismissed. .........................5

    A.    Plaintiff Does Not Allege Any Actionable Misstatement or Omission. .....................................................................................................7

    B.    Plaintiff Does Not Adequately Plead the Requisite Strong Inference of Fraudulent Intent. ..............................................................12

II.    The Section 20(a) Claims Should Be Dismissed...................................................20

CONCLUSION...................................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alcatel Sec. Litig.*,
  382 F. Supp. 2d 513 (S.D.N.Y. 2005) .......................................................................6

*Allied Irish Banks, P.L.C.* v. *Citibank, N.A.*,
  No. 03-CV-3748 (DAB), 2015 WL 4104703 (S.D.N.Y. June 30, 2015) ..................15

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) .......................................................................14

*In re Am. Express Co. Sec. Litig.*,
  No. 02-CV-5533(WHP), 2004 WL 632750 (S.D.N.Y. Mar. 31, 2004) ....................10

*American Fin. Intern. Grp.-Asia, L.L.C.* v. *Bennett*,
  No. 05-CV-8988(GEL), 2007 WL 1732427 (S.D.N.Y. June 14, 2007).....................13

*Anwar* v. *Fairfield Greenwich, Ltd.*,
  728 F. Supp. 2d 372 (S.D.N.Y. 2010) .......................................................................20

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009)...............................................................................................3, 5, 6

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ...................................................................................6, 15

*Bay Harbour Mgmt. LLC* v. *Carothers*,
  282 F. App'x 71 (2d Cir. 2008) ................................................................................18

*Boca Raton Firefighters and Police Pension Fund* v. *Bahash*,
  506 F. App'x 32 (2d Cir. 2012) ..................................................................................6

*Carpenters Pension Trust Fund of St. Louis* v. *Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014) .....................................................................................20

*In re CBI Holding Co., Inc.*,
  529 F.3d 432 (2d Cir. 2008) .....................................................................................14

*City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*,
  752 F.3d 173 (2d Cir. 2014) .................................................................................8, 12

*DeAngelis* v. *Corzine*,
  17 F. Supp. 3d 270 (S.D.N.Y. 2014) .......................................................................13

*ECA, Local 134 IBEW Joint Pension Trust of Chicago* v. *JPMorgan
  Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ........................................................................9

*Elendow Fund, LLC* v. *Rye Inv. Mgmt.*,
  588 F. App'x 27 (2d Cir. 2014) .................................................................19

*Fialkov* v. *Alcobra Ltd.*,
  No. 14-CV-09906 (GBD), 2016 WL 1276455 (S.D.N.Y. March 30,
  2016)............................................................................................................17

*Gissin* v. *Endres*,
  739 F. Supp. 2d 488 (S.D.N.Y. 2010) ........................................................18

*Hensley* v. *IEC Electronics Corp.*,
  No. 13-CV-4507 (JMF), 2014 WL 4473373 (S.D.N.Y. Sept. 11, 2014) ...................17

*Hutchison* v. *Deutsche Bank Sec. Inc.*,
  647 F.3d 479 (2d Cir. 2011) .........................................................................3

*In re Investors Funding Corp. of New York Sec. Litig.*,
  523 F. Supp. 533 (S.D.N.Y. 1980) ............................................................14

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*,
  859 F. Supp. 2d 572 (S.D.N.Y. 2012) .........................................................7

*Janus Capital Grp., Inc.* v. *First Derivative Traders*,
  564 U.S. 135 (2011).....................................................................................14

*Kemp* v. *Universal Am. Fin. Corp.*,
  No. 05-CV-9883(JFK), 2007 WL 86942 (S.D.N.Y. Jan. 10, 2007).............................8

*Kirschner* v. *KPMG LLP*,
  15 N.Y.3d 446 (N.Y. 2010) .......................................................................14

*Lattanzio* v. *Deloitte & Touche LLP*,
  476 F.3d 147 (2d Cir. 2007) .........................................................................5

*In re Lihua Int'l Sec. Litig.*,
  No. 14-CV-5037 (RA), 2016 WL 1312104 (S.D.N.Y. Mar. 31, 2016).....................11

*Lipow* v. *Net1 UEPS Techns., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015) ........................................................17

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
  910 F. Supp. 2d 561 (S.D.N.Y. 2012) ........................................................18

*Lopez* v. *CTPartners Exec. Search Inc.*,
  173 F. Supp. 3d 12 (S.D.N.Y. 2016) ...............................................................8, 11, 12

*In re Marsh & Mclennon Cos., Inc. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006) ...............................................................8, 9, 13

*Novak* v. *Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ...................................................................................16

*Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015).............................................................................................7

*Patel* v. *L-3 Commc'ns Holdings Inc.*,
  14-CV-6038 (VEC), 2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016) .........16, 19, 20, 21

*In re PetroChina Ltd. Sec. Litig.*,
  120 F. Supp. 3d 340 (S.D.N.Y. 2015) ........................................................11, 15, 16

*S. Cherry St., LLC* v. *Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009) .................................................................................13, 18

*Slayton* v. *Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010) ...................................................................................12

*Special Situations Fund III QP, L.P.* v. *Deloitte Touche Tohmatsu CPA, Ltd.*,
  33 F. Supp. 3d 401 (S.D.N.Y. 2014) .......................................................................18

*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008) ......................................................................20

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*,
  531 F.3d 190 (2d Cir. 2008) ...................................................................................13

*Tellabs, Inc.* v. *Makor Issues & Rights Ltd.*,
  551 U.S. 308 (2007)..................................................................................................12

*Tongue* v. *Sanofi*,
  816 F.3d 199 (2d Cir. 2016) .......................................................................................7

*Total Equity Capital, LLC* v. *Flurry, Inc.*,
  15-CV-4168 (JMF), 2016 WL 3093993 (S.D.N.Y. June 1, 2016) ............................17

*Turner* v. *MagicJack VocalTec, Ltd.*,
  No. 13-CV-448 (RWS), 2014 WL 406917 (S.D.N.Y. Feb. 3, 2013) .........................16

*Tyler* v. *Liz Claiborne, Inc.*,
  814 F. Supp. 2d 323 (S.D.N.Y. 2011) .....................................................................17

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
    No. 15-CV-1249, 2016 WL 3647959 (S.D.N.Y. July 1, 2016) ................................8, 9

*Westchester Teamsters Pension Fund* v. *UBS AG*,
    604 F. App'x 5 (2d Cir. 2015) ...................................................................................18

**Statutes and Other Authorities**

Fed. R. Civ. P. 9(b) ..............................................................................................1, 6, 10

Fed. R. Civ. P. 12(b)(6) .................................................................................................1

Private Securities Litigation Reform Act of 1995,
    15 U.S.C. § 78u-4(b).............................................................................................1, 6, 12

SEC Rule 10b-5,
    17 C.F.R. § 240.10b-5. ..........................................................................................5, 20

Section 10(b) of the Exchange Act,
    15 U.S.C. § 78j(b) .........................................................................................2, 5, 12, 20

Section 20(a) of the Exchange Act,
    15 U.S.C. § 78t(a). ...............................................................................................2, 5, 20

Defendant PJT Partners Inc. ("PJT") and defendants Paul J. Taubman and Helen T. Meates (the "Individual Defendants," with PJT, the "PJT Defendants") respectfully submit this memorandum in support of their motion to dismiss the Amended Class Action Complaint (the "Complaint" (ECF 25)) pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b).

## PRELIMINARY STATEMENT

This is a strike suit by a plaintiff who claims, at most, $150 in personal losses. He seeks to hold the PJT Defendants responsible under the securities laws for frauds by an employee of a PJT subsidiary, perpetrated entirely for his own benefit, against his own family, his closest friends, and PJT itself. The Complaint fails to allege an actionable misstatement or omission made with scienter by the PJT Defendants and should be dismissed with prejudice.

In March 2016, PJT discovered that Andrew Caspersen, a partner in the secondary advisory business of a subsidiary, Park Hill Group LLC ("Park Hill"), was stealing money from his friends and family. He was soliciting investments in fictitious debt instruments issued by entities he had formed, with names resembling parties in legitimate Park Hill transactions. PJT immediately reported Caspersen's fraud to the United States Attorney for the Southern District of New York. PJT soon thereafter learned Caspersen was also stealing money from PJT itself, which it also reported to the prosecutor. Caspersen was arrested and charged with criminal securities fraud on March 28, 2016. That day, PJT's stock closed at $23.66, down from $26.47 on March 24.

The disclosure of Caspersen's fraud, followed by the stock price drop, brought a typical putative class action lawsuit seeking to hold PJT responsible for Caspersen's actions in perpetrating a fraud to PJT's detriment. But the claims are so weak that only one plaintiff sued.

He filed an Amended Complaint on September 23, 2016, asserting Section 10(b) claims against the PJT Defendants and Caspersen and Section 20(a) claims against the Individual Defendants.

*First*, Plaintiff fails to allege any statement made by the PJT Defendants that was false or misleading in the absence of the disclosures he now says PJT should have made.  The alleged statements relate to generalized statements of opinion about PJT's and Park Hill's customer service and reputation and its Code of Business Conduct and Ethics ("Code of Conduct").  They are typical puffery that the courts in this Circuit find to be immaterial as a matter of law.  Nor can Plaintiff demonstrate that any statement in the Sarbanes-Oxley ("SOX") certification signed by Taubman and Meates misleadingly states their knowledge at the time with respect to PJT's financial reporting and disclosure controls.  To the contrary, PJT explicitly disclosed that "employee . . . misconduct . . . is difficult to detect" and could cause "reputational harm" and "the precautions we take to detect and prevent misconduct may not be effective."

*Second*, Plaintiff fails to state with the required particularity any facts giving rise to a strong inference that any PJT Defendant acted with the requisite state of mind.  He concedes no one but Caspersen knew of Caspersen's fraud when the alleged misstatements were made.  He cannot show that Caspersen made any of the alleged misstatements.  As a matter of law, because Caspersen's actions were entirely for his own benefit, the adverse-interest exception defeats any presumption that Caspersen's knowledge should be imputed to PJT.  His efforts to allege the Individual Defendants' scienter likewise fail.  Although he asserts Taubman and Meates should have been aware of various control failures and red flags, he fails to allege particularized facts to support the conclusory assertions.  Any inference of scienter is less compelling than that of none.

Because Plaintiff fails to plead a Section 10(b) claim against PJT or culpable participation by the Individual Defendants, his Section 20(a) claim should be dismissed.

## STATEMENT OF ALLEGED FACTS[1]

### A.    PJT Partners Becomes a Public Company on October 1, 2015

PJT is a global investment bank.  (¶¶ 9, 14.)  It was formed when certain businesses of Blackstone Group L.P., including Park Hill, were combined with PJT Capital LP, a financial advisory firm founded by Taubman.  (Ex. B at 2 [SEC Form 10-K]; ¶¶ 11, 15, 19.)  Shares in the combined business were distributed to Blackstone unitholders, and PJT began trading on the New York Stock Exchange ("NYSE") on October 1, 2015.  (¶ 15.)  Taubman has been Chairman and CEO and Meates partner and Chief Financial Officer since that date.  (¶¶ 11, 12.)

Park Hill is one of PJT's three businesses.  (Ex. B. at 4.)  It provides advisory and fundraising services in four areas: private equity, real estate, hedge funds and secondary advisory.  (*Id.*; ¶ 87.)  In 2015, it generated 28.5% of PJT's overall revenues.  (¶ 103.)

Defendant Andrew W.W. Caspersen joined Park Hill in February 2013, when it was still a division of Blackstone.  (¶ 26.)  He worked in Park Hill's secondary advisory business, which "delivers liquidity and capital solutions to private equity investors and managers."  (*Id.* (quoting Park Hill February 12, 2013 statement).)

### B.    The Discovery of Caspersen's Fraud

In March 2016, a hedge fund, Moore Capital Management, LP, contacted Park Hill, flagging suspicious behavior by Caspersen.  (¶¶ 55–59.)  On March 16, 2016, PJT hired Paul, Weiss, Rifkind, Wharton & Garrison LLP  to investigate.  (¶ 59.)  Finding evidence of

---

[1]    On a motion to dismiss, well-pleaded factual allegations are assumed to be true; conclusory allegations are not. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678–79 (2009).  The Court may also consider "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *Hutchison*

fraudulent conduct by Caspersen, Paul, Weiss, on behalf of PJT, immediately informed the United States Attorney.  (¶ 60.)

       As its investigation proceeded, PJT discovered that Caspersen had engaged in unauthorized and unlawful transactions outside the scope of his employment.  (¶ 73.)  Since late 2014, Caspersen had been offering to his closest friends and family members sham investment opportunities in entities formed by him with names resembling legitimate Park Hill clients. (¶¶ 41–51, 73.)  In the end, Caspersen defrauded his victims of over $38 million and lost the money making large speculative securities trades.  (¶¶ 48, 53, 73.)

       PJT also learned that Caspersen had diverted fees from two Park Hill clients to his own account.  (¶¶ 31–40, 73.)  He did so through fabricated invoices, domain names and fake bank accounts.  (*Id.*)  Caspersen stole approximately $8.1 million in September 2015, when Park Hill was a division of Blackstone.  (¶ 34.)  On October 21, 2015, shortly after PJT was formed, he stole a $760,000 fee from another client.  (¶ 38.)  He used funds obtained from his other victims to pay the fees to Park Hill one or two months later.  (¶¶ 36, 38.)  No client of Park Hill was party to any of Caspersen's fraudulent investments, and Caspersen acted alone.  (¶ 73.) Caspersen had no access to or control over bank accounts, financial systems or financial records of Park Hill.  (*Id.*)

       Caspersen was arrested on March 26, 2016 and charged with criminal securities and wire fraud on March 28, 2016.  (¶ 61.)  The Securities and Exchange Commission also brought a parallel civil action.  (*Id.*)  Park Hill terminated Caspersen on March 28, 2016.  (*Id.*) On that day also, PJT's stock closed at $23.66, down from a closing price of $26.47 on March

---

v. *Deutsche Bank Sec. Inc.*, 647 F.3d 479, 481 (2d Cir. 2011) (quotations omitted).  "¶ __" refers to paragraphs in the Complaint and "Ex. __" refers to exhibits to the Declaration of Amy L. Barton, dated November 3, 2016.

24.  (¶ 64.)  On July 6, 2016, Caspersen pleaded guilty, admitting that he took $38.5 million

from "investors in non-existent investment vehicles using false and misleading statements," and

that he "defrauded [his] employer, the Park Hill Group, of more than $8 million."  (¶ 74; Ex. C.

at 15:15–16 [July 6 Tr., *United States* v. *Caspersen* (S.D.N.Y., 1:16-cr-00414-JSR)].)

      **C.**    **The Complaint**

      Plaintiff Gregory T. Barrett filed this action on April 15, 2016, shortly after PJT's

stock price dropped, and amended his complaint on September 23, 2016 after he was appointed

lead plaintiff.  Although he purports to represent a class of those who purchased or otherwise

acquired PJT securities during the period between October 1, 2015 and March 28, 2016 (¶¶ 1, 8),

he personally claims to have suffered investment losses of only $150.  (*See* Order Granting

Motion to Appoint Lead Plaintiff at 3, ECF No. 22.)  Plaintiff purports to assert claims against

the PJT Defendants and Caspersen for violations of Section 10(b) and Rule 10b-5 of the

Exchange Act, and against the Individual Defendants for violations of Section 20(a) of the

Exchange Act.

## ARGUMENT

## I.    THE SECTION 10(b) AND RULE 10b-5 CLAIMS SHOULD BE DISMISSED.

      To state a claim under Section 10(b) and Rule 10b-5, plaintiff must allege that

defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in

connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that

plaintiffs' reliance was the proximate cause of their injury."  *Lattanzio* v. *Deloitte & Touche*

*LLP*, 476 F.3d 147, 153 (2d Cir. 2007) (quotations omitted).  "Threadbare recitals of a cause of

action's elements, supported by mere conclusory statements do not suffice."  *Ashcroft* v. *Iqbal*,

556 U.S. 662, 678 (2009).  Rather, a complaint must "contain sufficient factual matter . . . to

'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

A securities fraud claim is subject to heightened pleading requirements. Under Rule 9(b), the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

Rather than specify with particularity which statements he alleges are false, under the heading "Materially False and Misleading Statements," Plaintiff quotes at length from various sources, bolding certain portions. (¶¶ 83–87, 92, 94–97.) He follows the quotes with conclusory allegations that do not explain how or why the quotes are false. (¶¶ 88, 98.) Thus, he fails to meet the heightened pleading standards of the PSLRA and Rule 9(b). *Boca Raton Firefighters and Police Pension Fund* v. *Bahash*, 506 F. App'x 32, 37–38 (2d Cir. 2012) (complaint fell short of heightened pleading requirement because it required district court to search long quotes and determine how and why statements were false); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534–35 (S.D.N.Y. 2005) ("Plaintiffs neglect to make it clear what portion of each quotation constitutes a false representation, or which statements link up with which issues in the laundry list, placing the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts.").

Aside from failure to comply with the heightened pleading standards, Plaintiff's Complaint suffers from other fatal flaws. His long quotations fall into three general categories: (1) statements relating to PJT's and Park Hill's reputation (¶¶ 83–87), (2) PJT's 2015 10-K SOX certification (¶ 92) and (3) excerpts from the Code of Conduct (¶¶ 94–97). He cannot sufficiently plead any actionable misstatement or omission made with scienter.

### A.    Plaintiff Does Not Allege Any Actionable Misstatement or Omission.

In paragraphs 83 to 87 of the Complaint, Plaintiff quotes at length from the Information Statement in the Form 10 Registration Statement filed by Blackstone, a February 11, 2016 earnings call, PJT's 2015 Form 10-K and Park Hill's website. He bolds certain statements reflecting qualities that any public company, especially a new one, would tout —"deep long-standing relationships," "trusted advisors," ability to "customize high-quality solutions" and "deep networks." He alleges the statements are "false and misleading because, while touting Park Hill's top-tier services and extensive relationships, Defendants failed to disclose the fact that one of the Company's key personnel was perpetrating a scheme to misappropriate fee payments from the Company's clients." (¶ 88.) But the truth of the statements he quotes is not objectively determinable and they are merely statements of opinion. *See, e.g., Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1325 (2015) ("An opinion is a belief, a view, or a sentiment which the mind forms of persons or things.") (internal quotation marks omitted); *Tongue* v. *Sanofi*, 816 F.3d 199, 213–14 (2d Cir. 2016) (statement regarding "strong and robust treatment effect" was an opinion). Plaintiff cannot demonstrate that the PJT Defendants' alleged failure to disclose Caspersen's fraud prior to March 2016 (when Plaintiff concedes they had no knowledge of it) made any of these statements misleading.

"[T]he securities laws do not impose a general duty to disclose corporate mismanagement or uncharged criminal conduct." *In re ITT Educ. Servs., Inc. Sec. & S'holder*

*Derivatives Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) (quoting *In re Marsh & Mclennon Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 469 (S.D.N.Y. 2006)).  Alleged omissions must be "sufficiently connected to [d]efendants' existing disclosures to make those public statements misleading."  *Id.* (quoting *In re Marsh & Mclennon*, 501 F. Supp. 2d at 469).  A duty to disclose arises when a defendant: (1) "puts the reasons for its success at issue, but fails to disclose that a material source of its success is the use of improper or illegal business practices"; (2) "makes a statement that can be understood, by a reasonable investor, to deny that the illegal conduct is occurring"; and (3) "states an opinion that, absent disclosure, misleads investors about material facts underlying that belief."  *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15-CV-1249,  2016 WL 3647959, at *3 (S.D.N.Y. July 1, 2016) (quoting *Menaldi* v. *Och–Ziff Capital Mgmt. Grp. LLC*,  No. 14-CV-3251 (JPO), 2016 WL 634079, at *8 (S.D.N.Y. Feb. 17, 2016)).

        The absence of a reference to Caspersen's (unknown) fraud does not make any of the statements relating to PJT's and Park Hill's reputation misleading.  The statements are not actionable as a matter of law.  As courts routinely hold, such statements are the classic puffery that is not material under securities law.  *City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 183 (2d Cir.2014) ("It is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery'"); *see also Lopez* v. *CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 26–28 (S.D.N.Y. 2016) (statements that defendant had "one-firm culture" that was "strong" and characterized by "performance quality and results orientation" were immaterial puffery); *Kemp* v. *Universal Am. Fin. Corp.*, No. 05-CV-9883(JFK), 2007 WL 86942, at *14 (S.D.N.Y. Jan. 10, 2007) (finding statements that defendant had "strong sales force" and "good customer service," immaterial, noting that "[i]f general statements made by companies touting quality customer service and a strong sales force

were actionable, a never-ending tide of securities lawsuits would flood the courts"); *In re Marsh & Mclennon*, 501 F. Supp. 2d at 475 (defendant's statements regarding its "culture of excellence," "dedication to client service," and "independence of thought and objective advice" insufficient to state a claim).

Nor can Plaintiff demonstrate that any reasonable investor could have been misled about material facts underlying these opinions about PJT's and Park Hill's reputations. *See, e.g., ECA, Local 134 IBEW Joint Pension Trust of Chicago* v. *JPMorgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (reasonable investor could not rely on defendant's statements that it "set the standard for best practices in risk management techniques" as a guarantee that defendant would never take a step that might adversely affect its reputation); *In re Virtus*, 2016 WL 3647959, at *5 (statements about defendant's approach to oversight did not guarantee its choices would prevent selection of managers or sub-advisers who were less than "high quality"). To the contrary, PJT disclosed that employee misconduct could harm its reputation and PJT might not be able to detect it:

> Employee or contractor misconduct, which is difficult to detect and deter, could harm us by impairing our ability to attract and retain clients and by subjecting us to legal liability and reputational harm. There is a risk that our employees or contractors could engage in misconduct that would adversely affect our business. For example, our business often requires that we deal with confidential matters of great significance to our clients. If our employees or contractors were to improperly use or disclose confidential information provided by our clients, we could be subject to regulatory sanctions and suffer serious harm to our reputation, financial position, current client relationships and ability to attract future clients. It is not always possible to deter such misconduct, and the precautions we take to detect and prevent misconduct may not be effective in all cases. If our employees or contractors engage in misconduct, our business could be materially adversely affected.

(Ex. B at 12.)

Plaintiff fares no better in his allegations about PJT's SOX certification and Code of Conduct.  In paragraph 92, he quotes PJT's 2015 10K SOX certification, again without any indication of what he alleges is false.  Paragraphs 94 to 97 contain excerpts from PJT's Code of Conduct.  Plaintiff alleges:

> These representations were false and misleading because they _implied_ that the Company had adopted controls capable of providing reasonable assurance that these [Code of Conduct] policies were being followed.  But in fact, PJT's compliance, fraud-prevention, and internal controls were so utterly inadequate that Caspersen was able to perpetrate a criminal scheme that misappropriated nearly $9 million of Park Hill's clients' fee payments and defrauded investors of almost $40 million.

(¶ 98 (emphasis added).)

Plaintiff's claims as to what the statements imply, however, does not meet his burden under Rule 9(b) and the PSLRA to identify what is false.  *See, e.g.*, *In re Am. Express Co. Sec. Litig.*, No. 02-CV-5533(WHP), 2004 WL 632750, at *14 (S.D.N.Y. Mar. 31, 2004), *rev'd on other grounds sub nom. Slayton* v. *Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006) ("Rule 9(b) and the PSLRA entail consideration of the statements that a plaintiff contends were false, not plaintiff's interpretations of those statements.").  And even if a reasonable investor could read into the SOX certification or the Code of Conduct Plaintiff's proffered implication, Caspersen's fraud does not make them misleading.  First, as noted above, PJT's Form 10 and 10-K make clear that the controls it had adopted may not prevent employee fraud: "It is not always possible to deter such [employee] misconduct, and the precautions we take to detect and prevent misconduct may not be effective in all cases."  (Ex. B at 12.)

Second, Plaintiff cannot demonstrate that any of the statements made in the SOX certification is misleading.  The certification is qualified by the Individual Defendants' "knowledge" and relate to financial reporting and disclosure controls.  Plaintiff makes no non-

conclusory allegation of "knowledge" by either individual that would make these statements misleading.  Nor does he make any allegation of any defect in any financial control other than the circular argument that there must have been a defect if they did not catch Caspersen's fraud earlier.  *See In re Lihua Int'l Sec. Litig.*, No. 14-CV-5037 (RA), 2016 WL 1312104, at *10 (S.D.N.Y. Mar. 31, 2016) (concluding that allegation that controls were inadequate because they failed to identify a material loan and ensure it was disclosed was insufficient to allege falsity under PSLRA.  Finally, while the Certification does include a reference to fraud by management or other staff involved in "internal control over financial reporting," it includes no comparable certification for those, like Caspersen, with no such role.

Third, Plaintiff cannot allege any statement made with respect to the Code of Conduct is misleading.  He does not allege that any PJT Defendant made a statement that every employee was in compliance with the Code of Conduct during the Class period.  And he does not challenge the Code of Conduct's existence or its published description.  *See In re PetroChina Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 360 (S.D.N.Y. 2015) (plaintiffs failed to demonstrate that defendant's statements about compliance practices were false or misleading when there was no allegation that defendants claimed to be abiding by them or there was any challenge to existence of rules or their description).

In any event, claims relating to the Code of Conduct also fail because they relate to immaterial puffery.  *Lopez* v. *CTPartners Executive Search* is on point.  There, plaintiff alleged defendant made false statements by touting its culture for honesty and integrity, but failed to disclose a hostile work environment for women exemplified by lewd escapades by top male executives reported in the *New York Post*.  173 F. Supp. 3d at 17.  Plaintiff alleged that defendant's Code of Conduct constituted one of its misleading statements.  *Id.* at 26.  The court

11

rejected the argument, noting that the Code of Conduct was "quintessentially the sort of puffery" that was not actionable, especially when it was "explicitly aspirational." *Id.* at 28 (internal quotations omitted) (quoting the Code of Conduct and noting it was adopted "to deter wrongdoing" and "to promote … honest and ethical conduct"); *see also UBS*, 752 F.3d at 183 (noting that statements that are "explicitly aspirational with qualifiers such as 'aims to,' 'wants to' and 'should'" constitute immaterial puffery). The court concluded "it simply cannot be that every time a violation of that code occurs, a company is liable under federal law for having chosen to adopt the code at all, particularly when the adoption of such a code is effectively mandatory." *Id.* at 29 (quoting *Retail Wholesale & Department Store Union Local 338 Ret. Fund* v. *Hewlett–Packard Co.*, 52 F. Supp. 3d 961, 970 (N.D. Cal. 2014)).

In short, none of the alleged misstatements is made false or misleading by the PJT Defendants' alleged failure to disclose Caspersen's (undiscovered) fraud prior to March 2016.

**B.   Plaintiff Does Not Adequately Plead the Requisite Strong Inference of Fraudulent Intent.**

To sustain a claim under Section 10(b), plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *Slayton* v. *Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010) ("[A] plaintiff must plead facts to support a *strong* inference of scienter"). That inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.* v. *Makor Issues & Rights Ltd.*, 551 U.S. 308, 314 (2007). "When the defendant is a corporate entity, this means that the pleaded facts must create a strong inference that someone whose intent could be imputed to the

corporation acted with the requisite scienter."[2]  *Teamsters Local 445 Freight Div. Pension Fund*

v. *Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).  Scienter is not a "heightened form of

negligence," it requires "a state of mind approximating actual intent."  *S. Cherry St., LLC* v.

*Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (emphasis omitted).

Plaintiff concedes that the Individual Defendants had no knowledge of

Caspersen's frauds.  (*See, e.g.*, ¶ 60 (PJT found the fraud in March 2016).)  Success in alleging

PJT's scienter therefore depends on imputing Caspersen's knowledge to his victim PJT or factual

allegations that give rise to a strong inference that the Individual Defendants acted with a state of

mind that approximated actual intent.  Neither theory of scienter is tenable.

Plaintiff may not impute Caspersen's scienter to PJT because he fails to allege

facts that demonstrate Caspersen made any of the alleged misstatements.  Plaintiff may not

simply attribute statements on Park Hill's website to Caspersen because he was a "managing

director."  (*See* ¶ 89.)  As the *American Financial* court explained, "it is far from obvious that

senior corporate officers would be involved in drafting text for a corporate website."  *American*

*Fin. Intern. Grp.-Asia, L.L.C.* v. *Bennett*, No. 05-CV-8988(GEL), 2007 WL 1732427, at *11

(S.D.N.Y. June 14, 2007); *see also DeAngelis* v. *Corzine*, 17 F. Supp. 3d 270, 281 (S.D.N.Y.

2014) (statements from defendant's website and customer-accessible online account displays are

"not the type of group-published statements subject to the group pleading doctrine").  Other than

---

[2]    Plaintiff improperly attempts to group plead the scienter requirement referring to "Defendants" or "PJT"
throughout those allegations under the heading "Scienter."  *See DeAngelis* v. *Corzine*, 17 F. Supp. 3d 270, 281–
82 (S.D.N.Y. 2014) ("In a case involving multiple defendants, plaintiffs must plead circumstances providing a
factual basis for scienter for each defendant; guilt by association is impermissible.") (quoting *In re DDAVP
Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)).  Although in some circumstances plaintiff
can raise the required inference of a corporate entity scienter without regard to specific individual defendants,
*Teamsters*, 531 F.3d at 195, Plaintiff's allegations do not reflect "widespread corporate fraud" unable to be
connected to individual defendants.  *See In re Marsh & Mclennon*, 501 F. Supp. 2d at 481 (explaining the
possibility that corporate scienter may be sufficiently alleged in those situations of widespread corporate fraud
where it cannot be connected to individual defendants at the pleading stage).

Caspersen's title, Plaintiff makes no allegation from which an inference can be drawn that Caspersen, working in just one of the four businesses of Park Hill, would have had responsibility for generalized statements on the website.  He cannot attribute statements in PJT's public filings to Caspersen either, even if they relate to Park Hill.  (¶ 89.)  He has made no allegation that Caspersen had "direct involvement in day-to-day affairs" within PJT or Blackstone, the issuing entities, and cannot rely on any group pleading presumption.  *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 449 (S.D.N.Y. 2005) ("In order to invoke the group pleading doctrine against a particular defendant the complaint must allege facts indicating that the defendant was a corporate insider, with direct involvement in day-to-day affairs, at the entity issuing the statement."); *see also Janus Capital Grp., Inc.* v. *First Derivative Traders*, 564 U.S. 135, 142 (2011) ("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.").

Moreover, the adverse-interest exception precludes imputation of Caspersen's knowledge of his fraud to PJT.  When an agent has "totally abandoned his principal's interests," the presumption that an agent's knowledge is imputed to its principal no longer applies because "he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose." *Kirschner* v. *KPMG LLP*, 15 N.Y.3d 446, 465–67 (2010) (quoting *Center* v. *Hampton Affiliates*, 66 N.Y.2d 782, 784 (1985)); *In re CBI Holding Co., Inc.*, 529 F.3d 432, 453 (2d Cir. 2008) (adverse-interest exception applied where employee acted adverse to company with intent to obtain bigger bonus and to preserve his control over it).  Application of the adverse-interest exception is appropriate in instances of "outright theft, or looting or embezzlement—where the insider's misconduct benefits only himself or a third party; i.e., where the fraud is committed against a corporation rather than on its behalf." *Kirschner*, 15 N.Y.3d at 466; *see also In re*

14

*Investors Funding Corp. of New York Sec. Litig.*, 523 F. Supp. 533, 541 (S.D.N.Y. 1980) (finding that "[i]t cannot be seriously contested" that the misdirection of funds to personal accounts and sham transactions is adverse to the company defendant's interest).

The Complaint alleges that Caspersen's frauds were for his own benefit and, "in [Caspersen's] own words, 'just a way…to get money to feed a gambling addiction that was all-consuming.'" (¶ 31; s*ee* also ¶ 53; Ex. C. at 15:11–16; 15:18–20; 16:2–4.) Because his wrongful conduct was for Caspersen's benefit alone, Caspersen's knowledge of his fraud should not be imputed to PJT. *See Allied Irish Banks, P.L.C.* v. *Citibank, N.A.*, No. 03–CV–3748 (DAB), 2015 WL 4104703, at *9 (S.D.N.Y. June 30, 2015) (rejecting argument that employee fraud to cover own trading losses should be imputed to employer because scheme was directed at defrauding employer, not others on employer's behalf); *In re PetroChina*, 120 F. Supp. at 362–63 (rejecting application of adverse-interest exception where bribery scheme was designed to expand corporate defendant, distinguishing cases where corporate actors were deemed to be acting to corporation's detriment).

Plaintiff fails to demonstrate scienter on the part of the Individual Defendants, so his attempt to impute their scienter to PJT also fails. Like Caspersen, Plaintiff's general allegation that the individuals had "positions of control and authority" provides an insufficient basis to attribute the statements in Park Hill's website to them. (*See* ¶ 89.) Rather, he would need to allege facts "(1) showing that they had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99. He makes no attempt to plead motive and opportunity, nor could he. The public record demonstrates that the Individual Defendants sold no shares of PJT during the class period; indeed, they were purchasers instead. (Ex. D.) The lack of sales rebuts an inference of

15

scienter.  *See Turner* v. *MagicJack VocalTec, Ltd.*, No. 13-CV-448 (RWS), 2014 WL 406917, at *11 (S.D.N.Y. Feb. 3, 2013) (collecting cases, and holding scienter rebutted when "three of the four individual Defendants, all high-ranking executives at the Company, did not sell stock during the Class Period, and that two of these Defendants instead purchased stock during the relevant period").

Having failed to allege motive, Plaintiff's allegations that the Individual Defendants were reckless "must be correspondingly greater."  *In re PetroChina*, 120 F. Supp. 3d at 365 (internal quotations omitted).   To plead scienter through recklessness, he must allege that either the Individual Defendants had "knowledge of facts or access to information contradicting their public statements" or "failed to check information that they had a duty to monitor."  *Novak* v. *Kasaks*, 216 F.3d 300, 308, 311 (2d Cir. 2000); *Patel* v. *L-3 Commc'ns Holdings Inc.*, 14-CV-6038 (VEC), 2016 WL 1629325, at *8 (S.D.N.Y. Apr. 21, 2016) (citing *Novak*, 216 F.3d at 312).

Plaintiff alleges that scienter is demonstrated because PJT allegedly had inadequate internal controls around client billing at Park Hill and failed to monitor Caspersen's emails and personal trading.  (¶¶ 104–108.)  He fails to allege that the Individual Defendants were involved in the daily billing procedures or monitoring or should have known they were deficient.  *See Patel*, 2016 WL 1629325, at *10 (plaintiffs failed to plead facts raising inference of scienter when complaint lacked specificity regarding how information was transmitted from lower-level employees to executives or was contrary to company report); *In re PetroChina*, 120 F. Supp. 3d at 366 (plaintiff must allege more than that individual defendants "had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions").

16

Plaintiff asserts that the individuals can be presumed to know about the allegedly materially deficient billing procedures because Park Hill is a "core operation" of PJT.  (¶ 103.) That doctrine does not independently establish scienter, but merely provides supplemental support.[3]  *Fialkov* v. *Alcobra Ltd.*, No. 14-CV-09906 (GBD), 2016 WL 1276455, at *7 (S.D.N.Y. March 30, 2016) ("The majority of courts in the Second Circuit have found that the core operations doctrine may provide support for but not an independent basis of scienter." (quotations omitted)); *Lipow* v. *Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015) (same).  Without specific facts to show that the Individual Defendants knew about the alleged deficiencies at Park Hill, the doctrine cannot be used to bolster a scienter inference.  *See Tyler* v. *Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011) (core operations doctrine merely "bolsters the strength of the inference of scienter when plaintiff has already adequately alleged facts indicating that defendants might have known their statements were false").

Further, Park Hill is not a core operation.  "[C]ourts have required that the operation in question constitute nearly all of a company's business before finding scienter based on the 'core operations' doctrine."  *Id.*  Plaintiff alleges that in 2015, Park Hill accounted for only 28.5% of PJT's revenues (¶ 103), nowhere close to "nearly all."  *See, e.g.*, *Hensley* v. *IEC Electronics Corp.*, No. 13-CV-4507 (JMF), 2014 WL 4473373, at *5 (S.D.N.Y. Sept. 11, 2014) (subsidiary not core operation of parent, and source of the error within subsidiary that actually led to alleged false statements was not a core operation of the subsidiary, "let alone" the parent).

In any event, conclusory allegations that PJT had "materially deficient internal controls" that "constituted an extreme departure from the standards of ordinary care" (¶¶ 103,

---

[3]    Courts have questioned whether the "core operations" doctrine survives the PSLRA.  *Total Equity Capital, LLC* v. *Flurry, Inc.*, 15-CV-4168 (JMF), 2016 WL 3093993, at *5 (S.D.N.Y. June 1, 2016) ("It is far from clear,

17

108) aside, Plaintiff alleges no fact to raise an inference that the "danger was either known to the defendant or so obvious that the defendant must have been aware of it." *S. Cherry St.*, 573 F.3d at 109 (emphasis omitted); *see also Westchester Teamsters Pension Fund* v. *UBS AG*, 604 F. App'x 5, 7 (2d Cir. 2015) (no inference of scienter when plaintiffs offered no plausible explanation why defendants would ignore possibility of rogue trader; stronger opposing inference was mismanagement, not fraud).  Plaintiff relies only on Caspersen's fraud, alleging recklessness is demonstrated because the fraud was discovered in a day once PJT investigated. (¶ 115.)  Courts decline to infer scienter based on the speed a fraud unravels, because such claims amount to pleading by hindsight and is not a cognizable legal theory.  *See, e.g., Special Situations Fund III QP, L.P.* v. *Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 426 (S.D.N.Y. 2014) (claim that new management quickly discovered the fraud "suffer[ed] from hindsight bias"); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 579 (S.D.N.Y. 2012) ("Fraud is always obvious in retrospect, but it is not reckless to lack clairvoyance."); *see also Bay Harbour Mgmt. LLC* v. *Carothers*, 282 F. App'x 71, 77 (2d Cir. 2008) ("'[F]raud by hindsight' theory [] is not actionable in this Circuit."); *Gissin* v. *Endres*, 739 F. Supp. 2d 488, 501 (S.D.N.Y. 2010) ("[P]leadings based on fraud by hindsight are not actionable as a matter of law.").

Plaintiff also attempts to allege that the Individual Defendants disregarded red flags that would have alerted them to the fraud.  (¶ 116.)  Plaintiff claims that the month or two of delay between Caspersen's diversion of client fees and Park Hill's receipt of them should have alerted the Individual Defendants to the fraud.  (*Id.*)  But he again fails to allege facts that

however, that the core operations doctrine remains valid in light of the PSLRA."); *see Tyler* v. *Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 342–43 (S.D.N.Y. 2011) (citing cases as support for movement away from doctrine).

demonstrate that they knew about the timing of the payments, much less that they understood them to be untimely (or that a month's delay constitutes untimeliness for a professional services firm). The red flags Plaintiff pleads simply fail to raise an inference of the Individual Defendants' fraudulent intent that is "at least as compelling as any opposing inference of nonfraudulent intent." *Elendow Fund, LLC* v. *Rye Inv. Mgmt.*, 588 F. App'x 27, 28 (2d Cir. 2014). Plaintiff alleges that Caspersen diverted the $8.1 million in September 2015 when Park Hill was still part of Blackstone. (¶ 34.) The Individual Defendants had no responsibility for Park Hill then. (¶¶ 11, 12.) PJT was not formed until October 1, and Plaintiff pleads no facts to show that the Individual Defendants would then focus on the timing of an $8.1 million payment. Caspersen repaid the other invoice for $762,267, about 0.2% of PJT's total revenue, about a month after he diverted the funds. (¶ 38.) Other than this conclusory allegation, Plaintiff alleges nothing that suggests that such payments were untimely and constituted red flags. *See, e.g.*, *Patel*, 2016 WL 1629325, at *10 (explaining that just because "events that followed may have revealed that those explanations were not correct, they are not facially implausible").

Because none of Plaintiff's allegations individually supports a strong inference of scienter against the Individual Defendants, assessing them "holistically" does not save the Complaint. *See Patel*, 2016 WL 1629325, at *12. The only reasonable inference to draw from Plaintiff's allegations is that the Individual Defendants did not know and had no reason to know about Caspersen's fraud or any issues relating to internal controls.

*         *         *

At bottom, Plaintiff's Complaint is clearly a case of "pleading by hindsight." No fact plausibly pled raises a strong inference that any PJT Defendant knew or should have known about Caspersen's fraud. PJT's public statements adequately disclosed the facts known at the

19

time and were not made misleading by any omission.  Plaintiff's Section 10(b) and Rule 10b-5

claims should be dismissed with prejudice.

## II.    THE SECTION 20(a) CLAIMS SHOULD BE DISMISSED.

To state a Section 20(a) claim against the Individual Defendants, Plaintiff must

allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the

defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the

controlled person's fraud."  *Carpenters Pension Trust Fund of St. Louis* v. *Barclays PLC*, 750

F.3d 227, 236 (2d Cir. 2014).  Because he has not adequately pleaded the existence of a primary

violation by PJT, his Section 20(a) claim also fails.  *See, e.g.*, *In re Take-Two Interactive Sec.*

*Litig.*, 551 F. Supp. 2d 247, 307 (S.D.N.Y. 2008) ("Having failed to plead a primary violation of

the Exchange Act, the [plaintiff's] control-person claims with respect to the [] [f]raud necessarily

fail as well.").

The Section 20(a) claim should also be dismissed against the Individual

Defendants for the independent reason that Plaintiff fails to plead "culpable participation" with

particularity.  The appropriate standard is, like scienter, recklessness.  *Anwar* v. *Fairfield*

*Greenwich, Ltd.*, 728 F. Supp. 2d 372, 413 (S.D.N.Y. 2010) ("This Court is persuaded that

recklessness is the appropriate minimum standard of culpability that plaintiffs must plead under

§ 20(a)" (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 417 (S.D.N.Y.

2001))).  This Court has held that "culpable participation" must be pleaded with the same

particularity as scienter.  *Patel*, 2016 WL 1629325, at *17.  Plaintiff concedes that the Individual

Defendants had no knowledge of Caspersen's fraud prior to March 2016.  He cannot show

recklessness.  As discussed above at pages 18–19, Plaintiff has pled no specific facts that the

Individual Defendants were aware or should have been aware of any red flags that would give

rise to a strong inference of scienter at least as compelling as the opposing inference.  *See Patel*,

2016 WL 1629325, at *17 (finding no § 20(a) liability where plaintiff failed to allege knowledge, or recklessness in not knowing, of accounting fraud at subsidiary).

## **CONCLUSION**

For the reasons set forth above, PJT Partners and the Individual Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.


Dated:  November 4, 2016          Respectfully submitted,

　　　　　　　　　　　　　　　　 /s/  Aidan Synnott
                                Aidan Synnott
                                Amy L. Barton
                                PAUL, WEISS, RIFKIND, WHARTON
                                　 & GARRISON LLP
                                1285 Avenue of the Americas
                                New York, New York  10019-6064
                                Telephone:  (212) 373-3000
                                E-mail:  asynnott@paulweiss.com
                                E-mail:  abarton@paulweiss.com

                                Attorneys for Defendants PJT Partners Inc.,
                                Paul J. Taubman, and Helen T. Meates